# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOHN MURPHY** | **CIVIL ACTION** |
| **versus** | **NO. 12-1339** |
| **WARDEN LYNN COOPER** | **SECTION: "H" (3)** |

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITHOUT PREJUDICE**.

Petitioner, John Murphy, is a state prisoner incarcerated at the Avoyelles Correctional Center, Cottonport, Louisiana. On March 5, 2009, he was convicted of possession of a controlled dangerous substance (Clonazepam) under Louisiana law.[1] On March 20, 2009, he was sentenced to a term of four years imprisonment.[2] He appealed, and the Louisiana Fifth Circuit Court of Appeal

---

[1] State Rec., Vol. IV of VI, transcript of March 5, 2009, p. 169; State Rec., Vol. III of VI, minute entry dated March 5, 2009; State Rec., Vol. III of VI, jury verdict form.

[2] State Rec., Vol. IV of VI, transcript of March 20, 2009, p. 6; State Rec., Vol. IV of VI, minute entry dated March 20, 2009.

affirmed that conviction and sentence on November 24, 2009.[3] The Louisiana Supreme Court then denied his related writ application on June 25, 2010.[4]

In the interim, the state filed a multiple bill of information charging petitioner as a habitual offender. On July 10, 2009, the state district court found him to be a fourth offender and therefore resentenced him as such to a term of thirty years imprisonment without benefit of probation or suspension of sentence.[5] On February 23, 2010, the Louisiana Fifth Circuit Court of Appeal affirmed that habitual offender adjudication and enhanced sentence,[6] and, on October 15, 2010, the Louisiana Supreme Court denied his related writ application.[7]

On October 31, 2010, petitioner filed an application for post-conviction relief with the state district court.[8] That application was denied on November 19, 2010.[9] On July 18, 2011, he filed a writ application with the Louisiana Fifth Circuit Court of Appeal to seek review of the denial of relief. On August 17, 2011, the Court of Appeal ruled that the writ application was untimely filed

---

[3] State v. Murphy, 28 So.3d 496 (La. App. 5th Cir. 2009) (No. 09-KA-432); State Rec., Vol. VI of VI.

[4] State v. Murphy, 38 So.3d 334 (La. 2010) (No. 2010-KO-0016); State Rec., Vol. VI of VI.

[5] State Rec., Vol. V of VI, transcript of July 10, 2009; State Rec., Vol. V of VI, minute entry dated July 10, 2009.

[6] State v. Murphy, 34 So.3d 886 (La. App. 5th Cir. 2010) (No. 09-KA-805); State Rec., Vol. VI of VI.

[7] State v. Murphy, 45 So.3d 1110 (La. 2010) (No. 2010-KO-0690); State Rec., Vol. VI of VI.

[8] State Rec., Vol. VI of VI.

[9] State Rec., Vol. VI of VI, Order dated November 19, 2010.

and therefore refused to consider it.[10]  On May 4, 2012, the Louisiana Supreme Court then denied his related writ application without assigning reasons.[11]

On May 20, 2012, petitioner filed the instant federal application for *habeas corpus* relief.[12]  In its response, the state argues that petitioner's application is untimely and that he failed to exhaust his state court remedies.[13]

I.  Timeliness

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") generally requires that a petitioner bring his Section 2254 claims within one (1) year of the date on which his

---

[10]  State v. Murphy, No. 11-KH-739 (La. App. 5th Cir. Aug. 17, 2011); State Rec., Vol. VI of VI. Petitioner simultaneously sent the state district court a document captioned for the Louisiana Fifth Circuit Court of Appeal and styled as an application for a writ of review.  State Rec., Vol. II of VI. The state district court issued an order noting that "it is not clear if defendant is filing this action for consideration in this court, or if he is serving this court with a copy of such pleading."  Nevertheless, out of an abundance of caution, the state district court dismissed that application, noting that it should be filed with the Court of Appeal.  State Rec., Vol. II of VI, Order dated August 3, 2011.

[11]  State *ex rel.* Murphy v. State, 88 So.3d 455 (La. 2012) (No. 2011-KH-1940); State Rec., Vol. VI of VI.

[12]  Rec. Doc. 1.  "A prisoner's habeas application is considered 'filed' when delivered to the prison authorities for mailing to the district court."  Roberts v. Cockrell, 319 F.3d 690, 691 n.2 (5th Cir. 2003).  Petitioner states that he placed his federal application into the prison mailing system on May 20, 2012.  See Rec. Doc. 1, p. 16.

After this federal application was filed, petitioner returned to the state district court to file a motion to correct an illegal sentence on February 14, 2012, which he then supplemented on February 28, 2012.  State Rec., Vol. II of VI.  That motion was denied on March 23, 2012.  State Rec., Vol. II of VI, Order dated March 23, 2012.  He also subsequently filed another such motion which was denied on May 9, 2012.  State Rec., Vol. II of VI, Order dated May 9, 2012.  Lastly, on or about April 30, 2012, he filed a motion to annul the habitual offender adjudication.  State Rec., Vol. II of VI.  It is unclear whether the state district court has ruled on that motion.

[13]  Rec. Doc. 13.

underlying criminal judgment becomes "final."[14] On that point, the United States Fifth Circuit Court of Appeals has explained:

> The statute of limitations for bringing a federal habeas petition challenging a state conviction begins to run on "the date on which the [state] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). When a habeas petitioner has pursued relief on direct appeal through his state's highest court, his conviction becomes final ninety days after the highest court's judgment is entered, upon the expiration of time for filing an application for writ of certiorari with the United States Supreme Court. Roberts v. Cockrell, 319 F.3d 690, 693 (5th Cir. 2003).

Butler v. Cain, 533 F.3d 314, 317 (5th Cir. 2008).

However, under the AEDPA, a state criminal judgment is not final until *both* the petitioner's conviction *and* sentence are final. See Burton v. Stewart, 549 U.S. 147, 156-57 (2007); Scott v. Hubert, 635 F.3d 659, 665-67 (5th Cir.), cert. denied, 132 S. Ct. 763 (2011). As noted, although petitioner's conviction was affirmed on the first round of direct review, his habitual offender adjudication and enhanced sentence were affirmed later in the second round of direct review. Therefore, his state criminal judgment did not become final for the purposes of the AEDPA until January 13, 2011, i.e. ninety days after the Louisiana Supreme Court's decision on that second round of review. His one-year federal limitations period therefore commenced on that date and expired on January 13, 2012, unless that deadline was extended through tolling.

---

[14] Although § 2244(d)(1) has alternative provisions providing for other events which can trigger the commencement of the statute of limitations, those alternative provisions are not applicable in the instant case.

– 4 –

The Court first considers statutory tolling. Regarding the statute of limitations, the AEDPA expressly provides: "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). The United States Supreme Court has explained: "[A]n application is '*properly* filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." Artuz v. Bennett, 531 U.S. 4, 8 (2000) (footnote omitted).

The Court notes that petitioner in fact filed an application for post-conviction relief with the state district court on October 31, 2010.[15] However, that application was denied on November 19, 2010,[16] and therefore ceased to be "pending" on December 20, 2010, when petitioner's period expired for seeking review of that denial. Grillette v. Warden, Winn Correctional Center, 372 F.3d 765, 769-71 (5th Cir. 2004) (a state application ceases to be pending when the time for supervisory review expires).[17] Because the federal limitations period had not yet even

---

[15] State Rec., Vol. VI of VI.

[16] State Rec., Vol. VI of VI, Order dated November 19, 2010.

[17] Under Louisiana law, a litigant has thirty days to seek review by a court of appeal. Louisiana Uniform Rules of the Courts of Appeal Rule 4-3; see also Melancon v. Kaylo, 259 F.3d 401, 404 (5th Cir. 2001). Because the thirtieth day of the period here fell on a Sunday, the deadline was extended until Monday, December 20, 2010. See La.C.Cr.P. art. 13; La.Rev.Stat.Ann. § 1:55.

commenced at that point, that original district court filing does not affect the timeliness of this federal application.

The Court next looks to petitioner's related writ application filed with the Louisiana Fifth Circuit Court of Appeal in July of 2011. Clearly, petitioner is not entitled statutory tolling credit for that application because it was found to be untimely. The Court of Appeal held:

> In his *pro se* writ application, Relator claims that the 24th Judicial District Court erred in denying his application for post-conviction relief on November 19, 2010.
> Uniform Rules, Courts of Appeal, Rule 4-3 states in pertinent part:
>
>> In criminal cases, unless the judge orders the ruling to be reduced to writing, the return date shall not exceed 30 days from the date of the ruling at issue. When the judge orders the ruling to be reduced to writing in criminal cases, the return date shall not exceed 30 days from the date the ruling is signed. In all cases, the judge shall set an explicit return date; an appellate court will not infer a return date from the record.
>
> On November 19, 2010, the district court denied Relator's application for post-conviction relief. Relator's writ application was filed in this Court on July 25, 2011, with a postmark date of July 18, 2011. Therefore, Relator's writ application is untimely filed more than 30 days from the date of the November 19, 2010 ruling at issue. "An application not filed in the appellate court within the time so fixed or extended shall not be considered, in the absence of a showing that the delay in the filing was not due to the applicant's fault." Uniform Rules, Courts of Appeal, Rule 4-3. No showing as to the cause of Relator's delay was provided.
> Accordingly, this writ application is not considered.[18]

---

[18] State v. Murphy, No. 11-KH-739 (La. App. 5th Cir. Aug. 17, 2011); State Rec., Vol. VI of VI.

The United States Supreme Court has conclusively held that "time limits, no matter their form, are 'filing' conditions"; when the state courts have rejected a state application as untimely, it *cannot* be considered "properly filed" so as to entitle the petitioner to statutory tolling. Pace v. DiGuglielmo, 544 U.S. 408, 417 (2005). Simply put: "When a postconviction petition is untimely under state law, that is the end of the matter for purposes of § 2244(d)(2)." Id. at 414 (internal quotation marks and brackets omitted). Because the Louisiana Fifth Circuit Court of Appeal expressly found that the writ application was untimely and refused to consider it on that basis, petitioner receives no tolling credit whatsoever for that application. Campbell v. Cain, Civ. Action No. 06-3983, 2007 WL 2363149, at *3 (E.D. La. Aug. 15, 2007).[19]

The only remaining state application for post-conviction or other collateral review that need be considered is petitioner's related Louisiana Supreme Court writ application. That application was pending from on or about September 2, 2011,[20] through May 4, 2012. If that filing

---

[19] This Court notes that the application for a writ of review petitioner simultaneously filed with the state district court likewise does not entitle petitioner to statutory tolling. As previously stated, that application was dismissed on the grounds that it had been filed in the wrong court. State Rec., Vol. II of VI, Order dated August 3, 2011. A state application filed in the wrong court does not toll the statute of limitations. Sibley v. Culliver, 377 F.3d 1196, 1202-03 (3rd Cir. 2004); Handy v. Everett, 12 Fed. App'x 804 (10th Cir. 2001); Cunningham v. Payne, No. C05-5839, 2006 WL 1875890, at *5 (W.D. Wash. July 5, 2006); Williams v. Crosby, No. 8:03-CV-1574-T-27, 2006 WL 1823437, at *3 (M.D. Fla. June 30, 2006).

[20] The United States Fifth Circuit Court of Appeals has held that federal *habeas* courts must apply Louisiana's "mailbox rule" when determining the filing date of a Louisiana prisoner's *pro se* state court filing, and therefore such a document is considered "filed" as of the moment the prisoner "placed it in the prison mail system." Causey v. Cain, 450 F.3d 601, 607 (5th Cir. 2006). That date cannot be gleaned with certainty with respect to the Louisiana Supreme Court filing; however, the clerk of that court noted that it was mailed in an envelope metered on September 2, 2011. State Rec., Vol. VI of VI. Therefore, the application was "filed" no later than that date.

tolled the federal limitations period, petitioner's federal application is timely;[21] however, if it did not, this federal application is untimely.[22]

The state contends that the federal limitations period was not tolled by that filing. However, the state offers no explanation or citation of legal authority for that contention. On the other hand, petitioner likewise offers no argument as to why the writ application did toll the limitations period. The Court must therefore struggle with this issue without the assistance of the parties.

One could perhaps argue that if, as here, a post-conviction application ceases to be "pending" at any point, it cannot be revived or resurrected for tolling purposes by a subsequent related filing. While that argument might at first blush seem to have some merit, the United States Fifth Circuit Court of Appeals has apparently taken the contrary view. For example, in Melancon v. Kaylo, 259 F.3d 401 (5th Cir. 2001), the Fifth Circuit expressly concluded that, despite a period during which Melancon's post-conviction application was clearly no longer pending, a later "properly filed" writ application relating to the original application "tolled all *subsequent* proceedings related to that application." Id. at 407 (emphasis added).

---

[21] Under this scenario, two hundred thirty-one (231) days elapsed untolled prior to the filing, and fifteen (15) days elapsed between the date it was denied and the date on which petitioner filed this federal application. Because a total of only two hundred forty-six (246) days elapsed untolled, the federal application would be timely.

[22] Under this scenario, in which no statutory tolling credit is given, four hundred ninety-two (492) days elapsed untolled between the date petitioner's conviction became final and the date he filed his federal application. Because three hundred sixty-five (365) days elapsed untolled, the federal application would be untimely.

The situation here is arguably analogous. Petitioner's Louisiana Supreme Court application was clearly filed in connection with the state post-conviction proceedings, and this Court is aware of no basis for finding that it was not "properly filed" within the meaning of § 2244(d)(2). It was filed within thirty days of the Court of Appeal's decision and was therefore timely. Moreover, the Louisiana Supreme Court denied the application without assigning any reasons whatsoever, and so there is no indication that the application was not considered due to any other procedural irregularity. Therefore, it is at least debatable that the federal limitations period was tolled while the Louisiana Supreme Court writ application was pending.

In light of the foregoing, and mindful that courts "must be cautious not to apply the statute of limitations too harshly," Fisher v. Johnson, 174 F.3d 710, 713 (5th Cir. 1999), this Court declines to recommend that this petition be dismissed as untimely.

## II. Exhaustion

Timeliness, however, is only one hurdle that a petitioner must overcome in order to be entitled to federal *habeas corpus* review. Pursuant to 28 U.S.C. § 2254(b)(1)(A), a petitioner normally must also first exhaust his remedies in state court before seeking *habeas corpus* relief. "To exhaust, a petitioner must have fairly presented the substance of his claim to the state courts." Wilder v. Cockrell, 274 F.3d 255, 259 (5th Cir. 2001) (internal quotation marks omitted). Moreover, the United States Supreme Court has made clear that a claim is unexhausted unless it has been "fairly presented" in "*each* appropriate state court." Baldwin v. Reese, 541 U.S. 27, 29 (2004) (emphasis added). Further, to meet the exhaustion requirement, a claim must have been asserted in "a procedurally proper manner according to rules of the state courts." Dupuy v. Butler, 837 F.2d

699, 702 (5th Cir. 1988). For the following reasons, it is clear that not all of petitioner's claims were "fairly presented" at *each* level of the state courts.

Although petitioner's federal application is rambling and difficult to decipher, it appears that, at a minimum, he is asserting the following claims:

1. There was insufficient evidence to support petitioner's conviction;

2. Evidence of other crimes was wrongly admitted at trial;

3. Petitioner's sentence is excessive;

4. Petitioner's rights were violated because there were no African-Americans included in the jury pool;

5. Petitioner's conviction was obtained through prosecutorial misconduct;

6. Petitioner's conviction was based on evidence which resulted from an illegal search and seizure;

7. Petitioner received ineffective assistance of counsel;

8. Petitioner was not properly advised of his rights in the multiple offender proceedings; and

9. Petitioner was improperly found to be a multiple offender.

As noted, petitioner's case has undergone three rounds of review in the state courts: two rounds of direct review and one round of collateral review. On the first round of direct review, petitioner fairly presented his claims that (1) there was insufficient evidence to support his

conviction and (2) evidence of other crimes was improperly admitted at trial. On the second round of direct review, petitioner fairly presented his claims that (1) he was wrongly adjudicated a multiple offender because the state failed to prove his identity with respect to the predicate convictions and (2) his sentence is excessive. Therefore, those four claims, which are also asserted in the federal petition, are properly exhausted. However, those are the *only* claims which meet the exhaustion requirement.

Even if all of petitioner's remaining claims were thereafter asserted in the state post-conviction proceedings, which is debatable at best, they are nevertheless still unexhausted for federal purposes on other grounds. For example, at a minimum, petitioner's post-conviction claims were not "fairly presented" to the Louisiana Fifth Circuit Court of Appeal for review. As previously discussed in detail, the Court of Appeal held that petitioner's writ application was untimely. Because petitioner failed to follow the state court rules concerning timeliness when filing that writ application with the Court of Appeal, that court did not have a fair opportunity to rule on those claims. See Dupuy v. Butler, 837 F.2d 699, 702 (5th Cir. 1988) (noting that a state court has a fair opportunity to pass upon a claim only if it is presented to the court in "a procedurally proper manner according to the rules of the state courts"). Therefore, that failure is in and of itself sufficient to render *all* of petitioner's post-conviction claims unexhausted, because the claims clearly were not "fairly presented" to "*each* appropriate state court" as required by law. See Baldwin v. Reese, 541 U.S. 27, 29 (2004) (emphasis added).

As a result, petitioner's federal application is a "mixed" petition asserting both exhausted and unexhausted claims. As such, it should be dismissed without prejudice on that basis.

Alexander v. Johnson, 163 F.3d 906, 908 (5th Cir. 1998) ("A habeas petition containing both exhausted and unexhausted claims is a 'mixed' petition which should be dismissed without prejudice.").

## RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by John Murphy be **DISMISSED WITHOUT PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[23]

New Orleans, Louisiana, this twenty-eighth day of September, 2012.

*[signature: Daniel E. Knowles, III]*

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[23] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.